STATE HIGHWAY COMMISSIONER OF THE STATE OF NEW JERSEY, APPELLANT, v. NATIONAL FIREPROOFING CORPORATION, A CORPORATION OF PENNSYLVANIA, RESPONDENT.

Argued May 20, 1941—Decided October 20, 1941.

For the appellant, *David T. Wilentz*, Attorney-General; *William A. O'Brien*, counsel to the State Highway Commissioner; *William J. McCormack*, assistant counsel to the State Highway Commissioner, and *John E. Toolan*, attorney for the State Highway Commissioner.

For the respondent, *Fred W. De Voe*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The State Highway Commissioner appeals from a judgment held by the respondent land owner, National Fireproofing Corporation, representing the damage done respondent for lands taken by the state for public purposes. The respondent operated two plants in Middlesex County for the manufacture of hollow tile. Its lands contain the clay used in this operation. About thirty acres of these lands were appropriated for public use.

All the grounds of appeal challenge the action of the court in ruling on questions of evidence and are argued under eight headings. Under the first heading the argument is that the expert opinion of Messrs. McHose and Ryan (witnesses for land owner) was based upon an erroneous theory of damages, incorrect assumptions of fact, and a "formula" that had no legal basis. An objection first was entered to the qualifications of Mr. McHose. The court was right in overruling the objection. Whether a witness be expert is a matter for the court to determine and, if there was any evidence to justify the court's view that the witness was expert, error may not be assigned for such ruling by the trial judge. *Ross* v. *Commissioners of Palisade Interstate Park*, 90 *N. J. L.* 461, 464; *Brown* v. *New Jersey Short Line Railroad Co.*, 76 *Id.* 795, 797. It is also argued that error resulted from the court's refusal to strike out the testimony of this witness. The reason for the motion to strike out his testimony is not stated in the record. We gather, however, that the appellant believed, at that juncture, that the value of the land under consideration, as stated by the witness, was based upon only one sale (McClees' land) and, further, that the quality of the clay land in these tracts was not comparable. Before ruling on the motion the learned trial judge asked the witness if other sales had not been considered by him as factors in arriving at his conclusion. The witness stated that the other sales that had been discussed in his testimony had been considered by him in arriving at his value of the lands in question. That being so, there was no basis for striking out his testimony.

The objections to the qualifications of the expert witness, Ryan, were likewise properly overruled. *Ross* v. *Commis-*

*sioners of Palisade Interstate Park, supra; Brown* v. *Short Line Railroad Co., supra.* The appellant's brief concedes that both McHose and Ryan "were practical clay miners." It is also said that it was error to deny motion to strike out Mr. Ryan's testimony. We find no error here. The witness, a man of much experience in working "clay lands," plainly stated that he valued the property as clay lands. This is what they were. He had been interested all his adult life in such lands and his testimony was, in our judgment, competent. The motion to strike out this testimony was based on the theory that the witness arrived at the value of the land by assuming a removal and sale of the clay it contained. But when the witness, in answer to a question from the court, said that he valued the land as clay land and took its "quality" into consideration, it became clear that his appraisal rested on the legitimate factors present in the tract.

Throughout the argument under this heading it is constantly stressed that there is no basis in law for the "McHose formula." It should be understood that this witness did not put forth his theory as a formula. He merely explained how he computed the value of the land and opposing counsel called the method "the McHose formula." Whether his theory was tenable was a matter to be thoroughly sounded on cross-examination. If his method of arriving at value was bizarre or untenable (and we do not intimate that it was), complete opportunity was available to uncover those infirmities. All of this, however, was a matter for cross-examination, counter-proof and argument to the jury. How the witness arrived at his conclusions was something incidental to and part of his evidence. Its worthiness as evidence and not its competency was the issue. The matter was one of fact. Before leaving the point, it should be noted that there was no objection to the McHose method of computation as such. Counsel for the appellant, by a thorough cross-examination, attempted to undermine the opinion of the witness as to valuation and dissipate its effect. Perhaps he succeeded. We have no way of knowing whether the jury accepted the land value stated by this witness. All that the argument of the appellant under this point amounts to is that the damages found by the jury

were too high. This matter was argued before the court below on rule to show cause and the discharge of the rule makes manifest the fact that the trial court did not agree with the appellant on this phase of the case.

Under the second point it is argued that the witness, McHose, based his calculations on a "formula" which "departed from the facts assumed in the hypothetical question addressed to him on direct examination." The so-called hypothetical question is not pointed out in the brief. We find a line of questions intended to support the witness' valuations. The complaint seems to be that the witness took into consideration the availability of the land for shipping by water. This factor was entirely proper to consider in computing value. *Ringwood Co.* v. *North Jersey, &c., Comm.,* 105 *N. J. L.* 165, 168, 169. The balance of what is said under this heading is in effect a reargument of the first point.

Under the third heading—which comprehends grounds of appeal 16 to 29, 32 to 41, 44 to 52, inclusive—the argument is that the court erred in admitting evidence of the reproduction cost of buildings and in admitting testimony concerning "accelerated obsolescence that did not in any way represent a diminution in market value of the buildings or property and was based on conjectural hypotheses and erroneous theory of damages." The basis for this argument is contained in thirty-three grounds of appeal which bring up, in the main, questions addressed to the witness, Warren E. Sanborn, which were allowed over objection to "the whole line" of such testimony. The situation was briefly this: The corporation which owned the land had erected buildings for its own purposes on locations that were surrounded by clay deposit lands. Based on the average amount of clay taken out of the lands over a fifteen year period, it was estimated that it would take forty-six years to exhaust the deposits and that the buildings, if kept in repair, would last for that period of time. The state's acquisition of approximately one-third of the land resulted in reducing the life of the remainder as a clay producer to a thirty year period and the theory of the witness was that these buildings which were specialties would therefore be no longer useful as plant buildings at the end of the thirty year period

which would mark the exhaustion of the lands as far as clay was concerned. The contention of the land owner is that that was an element of damage and is referred to as "accelerated obsolescence" of the buildings.

In the colloquy between the court and counsel for the state, it was admitted by the latter that the removal of this clay bed area from the whole tract would accelerate depreciation. The state's attorney contended, however, that there was no proof of annual clay consumption and of course no proof that the buildings would be kept in repair so as to be usable for forty-six years. As to the first point, we find proofs by the witness, Ertle, of the annual yearly consumption of clay over a fifteen year period and of course it was not disputed that the total available clay in the land owner's tract would, after the state had taken the lands it required, be considerably reduced. As to the second point, concerning repairs, it is perfectly clear the witness was expressing an opinion on this element of damages on the assumption that the buildings would be maintained in reasonable repair. The court was very careful in admitting the testimony to say to the jury that they should consider and weigh these matters, arrive at their own inferences and give thought to the probabilities; that the use of the clay, according to the average consumption that had obtained might not continue; that the company might go out of business; that the type of product now manufactured from clay might be discarded for something better or that the demand for such product might increase or decrease, and that all these factors were for the consideration of the jury, and in this we think the court was entirely correct.

On this phase of the damages, *i. e.,* accelerated obsolescence, we see no reason why the jury should not consider such testimony in determining the damage, if any, to the remainder. It is a fair inference that the buildings were erected for the purposes for which they had been used for years and if by the taking of the lands from the whole tract the plants became useless as such to the owner sixteen years sooner than normally they would, that was a factor in the appraisal of consequential damage. The witness' testimony with regard to reproduction was not prejudicial. It was admitted for a

limited purpose and only as incidental to the evidence concerning the acceleration of depreciation. Evidence of any reasonable damage visited on a land owner whose lands are taken by condemnation is admissible. The land owner is entitled to compensation for the value of the land with reference to any use to which it is reasonably adapted, and this seems to be the settled law of this state. The property owner whose lands are taken in condemnation for public use should have a fair price "for any use for which it has a commercial value of its own in the immediate present or in reasonable anticipation in the near future. It is for the owner's deprivation of any existing value that he is to be compensated." *Currie* v. *Waverly, &c., Railroad,* 52 *N. J. L.* 381, 395; *Manda* v. *Orange,* 82 *Id.* 686, 689; *Ringwood* v. *North Jersey Com., supra; Braidburn Realty Co.,* v. *East Orange,* 107 *Id.* 291, 294; *Meeker* v. *East Orange,* 77 *Id.* 623; *State Highway Comm.* v. *Dover,* 109 *Id.* 303, 306. When land is taken under proceedings in eminent domain the owner is entitled to recover for all damages, present and prospective, which may be known or may reasonably be expected to result from the construction and maintenance of the improvement in a proper and legal manner since there cannot be successive proceedings. *Sterner* v. *Nixon,* 116 *Id.* 418, 421; 20 *C. J.* 763, 764. In 20 *C. J.,* § 228, *pp.* 769, *et seq.,* the rule is stated thus: "The best and most valuable use to which the property which is taken for the public use is adapted should be considered."

The next point—that the opinion of the witness, Sanborn, was predicated upon a sequence of conjectures—requires little discussion. What the "conjectures" were has already been mentioned, *i. e.,* average clay consumption and estimate of time when the clay would be exhausted and repairs to plant. This testimony, to repeat, was not admitted as an item of damage as such but as an element which the jury might consider in determining the value of lands before and after taking. There was some evidence of probable depreciation and it was admitted under proper instructions by the court. We think there is no merit in the point.

The fifth point concerns questions addressed to the witness, Ertle. It is said that the first question which was allowed

and made a ground of appeal is irrelevant. The question was: "Have you a sheet there showing the net profit per ton from all these plants during the past fifteen years? *A.* I have." Whether this question and answer was relevant or not, assuredly it was not prejudicial. As to the next question or group of questions argued for error we find no objection or exception thereto in the record. They are not available therefore on appeal.

It is argued under the next heading that the court erroneously excluded evidence, tendered by the State Highway Commissioner, of sales of comparable property "which occurred after the date on which the condemnation petition was filed." The condemnation proceedings were instituted on September 30th, 1938. One of the sales about which the expert witness was asked on cross-examination took place about two years after the date on which the condemnation was begun; another was made in June, 1939. The preliminary question—very general in scope—was if it was not a fact "that the water front property is falling rather than going up in this area?" The argument of the appellant is that sales made after the petition in condemnation was filed are evidential. Given certain conditions this may be conceded. But at the time this testimony was offered by appellant and upon objection, excluded by the trial court, there was no statement by the appellant to show the materiality or relevancy of the testimony; or that the properties, of which sales were made after the condemnation had begun, were comparable or if the evidence was admitted, just what it tended to prove. Several other points are argued under this heading. None has merit. In one (ground 57) there was no exception to the court's ruling and in another (ground 58) the court made no ruling because no objection was offered. A third (number 59) is of no moment since the witness said he had no personal knowledge of the matter about which he was under interrogation. It was clearly right to exclude such testimony. It serves no purpose to pursue the discussion under this heading further. It is sufficient to say on the main point there was no tender on the part of the appellant of information as to what the answer to the excluded

questions would tend to prove or that the properties were similar or comparable. It was no abuse of that discretion entrusted to a trial judge to exclude evidence of such sales under these circumstances. *Middleton* v. *Griffith*, 57 *N. J. L.* 442; *Toscani* v. *Quackenbush Co.*, 112 *Id.* 173; *Fiedler* v. *Friedman*, 124 *Id.* 514.

Points 7 and 8 remain to be considered. The former charges that the court erred in receiving evidence from persons who were not qualified as experts. The substance of this point has been considered and requires no further discussion. The latter is that the court erred in striking out certain exhibits "showing a decline in industry to controvert the owner's evidence of profits and damages." The complete answer to this argument is that the graphs prepared by the witness, Wheeler, included a showing in regard to manufactured products that were foreign to the respondent's business. But more important than that, the substance of the graphs, so far as they were pertinent, had found place in the record in the oral testimony of the state's witnesses.

We find no substantial or prejudicial error in the record. The argument of the appeal was rested in great part on the weight of evidence and that may not be considered here. The court, in a careful and helpful charge, fully instructed the jury on the issue in this matter. Counsel for both sides must have been content at that time since no exception to the charge was taken by either.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.