JOSEPH L. MUSCARELLE, INC., A NEW JERSEY CORPORATION, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. STATE OF NEW JERSEY, BY THE DEPARTMENT OF TRANSPORTATION AND THE COMMISSIONER OF TRANSPORTATION, DEFENDANT–APPELLANT AND CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 26, 1979—Reargued June 2, 1980.
Decided July 24, 1980.

386

Before Judges SEIDMAN, MICHELS and FURMAN.

*G. Frederick Blazure,* Deputy Attorney General, argued the cause for appellant and cross–respondent *(John J. Degnan,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel).

*Dean A. Gaver* argued the cause for respondent and cross–appellant *(Hannoch, Weisman, Stern & Besser,* attorneys).

The opinion of the court was delivered by

MICHELS, J. A. D.

Defendant State of New Jersey, by the Department of Transportation and the Commissioner of Transportation (hereinafter sometimes collectively referred to as the "State"), appeals and plaintiff Joseph L. Muscarelle, Inc. (hereinafter "Muscarelle") cross–appeals from a judgment of the Law Division (1) directing the State to institute condemnation proceedings to fix the compensation to be paid Muscarelle for the alleged compensable

taking of access rights to the latter's property; (2) fixing the valuation date of such taking and (3) awarding Muscarelle counsel fees and costs.

The facts essential to the resolution of this matter may be summarized as follows. Prior to 1975 Muscarelle was the owner of 10.375 acres of land located near the intersection of Routes 23 and 46 in the Township of Wayne, New Jersey. The property was near the Willowbrook Mall, located north of Route 46 and west of Route 23, and on its southerly side had approximately 800 feet of access permitted frontage along Route 46. However, the frontage served only westbound traffic since Route 46 was a divided highway in the area of this property. In September 1965 the State undertook a major highway construction project which provided for the realignment of the intersection of Routes 23 and 46 and new Interstate Route 80. On July 14, 1966, as part of the project, the State instituted a condemnation proceeding to acquire 1.712 acres of land along the northerly edge of Muscarelle's property needed for the construction of Route 80. In addition, the State sought to acquire a drainage easement along the easterly 430 feet of Muscarelle's 800 feet of frontage on Route 46. This drainage easement was necessitated by the proposed construction of a ramp which could connect Routes 80 and 23 with Route 46. This ramp was known and will hereinafter be referred to as "Ramp L." The proposed construction of Ramp L did not require the acquisition of any of Muscarelle's land because the ramp was to be built within the existing Route 46 right-of-way. Moreover, construction of Ramp L did not deny total access to Muscarelle's property along Route 46 since approximately half of Muscarelle's property fronted along the ramp and approximately half along Route 46.

As a result of the construction of Ramp L, ramp traffic would gradually merge with the Route 46 traffic and Route 46 traffic would have to weave across Ramp L traffic in order to approach the Muscarelle property. Muscarelle feared that this traffic flow would create a potentially hazardous situation for motorists attempting to enter its property from Route 46. Muscarelle therefore notified the State of this potential hazard and sug-

gested that a reconfiguration of the intersection be undertaken. In February 1966 Harvey W. Bingham, Jr., Muscarelle's chief engineer, conferred with an engineer from the Department of Transportation (Department) and reviewed the highway design. On June 27, 1966, shortly after the State instituted condemnation proceedings, Bingham submitted a suggested redesign of the ramp. By letter dated November 29, 1966 the Acting State Highway Commissioner notified Muscarelle that its proposed redesign of the ramp would create greater weaving problems than presently existed, pointing out that there was no denial of access to its property. The Acting Commissioner also informed Muscarelle that any further consideration of the latter's proposal was unnecessary, in effect, denying Muscarelle's request for access. Nonetheless, discussions continued between the State and Muscarelle until the condemnation hearing commenced on May 1, 1969. By that date the realignment of the highway interchange, including Ramp L, had been completed.

On May 1, 1969 the condemnation case was heard by the Commissioners. The State offered evidence to establish just compensation for the land taken plus damages to the remainder to be a total of $77,000, and Muscarelle offered proofs to establish just compensation to be a total of $290,324. Muscarelle's appraiser was of the opinion that by reason of the taking, the property would cease to be prime industrial and commercial land and would be best usable as farmland. In reaching this conclusion he noted the hazards that would be presented to cars entering the Muscarelle property from Route 46 by reason of the construction of Ramp L. Bingham also testified before the Commissioner as to potential traffic hazards created by the realignment of the intersection, particularly the construction of Ramp L, and was of the opinion that another ramp be located east of the property to provide a safe access. According to Bingham's testimony, the loss of access by the State's taking of the land "sterilizes" the property for commercial and industrial egress and ingress traffic.

At the conclusion of the condemnation hearing the Commissioners filed a report, dated May 7, 1969, awarding Muscarelle

compensation in the sum of $106,000. The State appealed the award to the Superior Court. While the appeal was pending and prior to trial, the State and Muscarelle continued discussions pertaining to the access problems created by the highway construction project. In fact, the trial was adjourned several times by the parties to enable them to continue their discussions. Eventually, the condemnation appeal was settled by the parties. A consent judgment, dated May 22, 1973, was entered in the Superior Court, directing the State to pay Muscarelle $106,000 "as full settlement of the condemnation proceedings"–the same sum originally awarded by the Commissioners. There was no agreement or understanding by the parties reserving from the operation or effect of that judgment any claim for damages arising out of the access problems.

Following the entry of the consent judgment meetings were still held between the representatives of the State and Muscarelle in an attempt to solve the access and traffic problems, but nothing was resolved. In early 1975 Muscarelle decided to construct a commercial office building to be known as "Wayne Interchange Plaza" on the property, and in late Fall of 1975 site plan work was commenced. On December 3, 1975 Muscarelle filed an application for access with the Department, seeking permission to construct an ingress driveway, connecting the westerly end of its property with Route 46 and an egress driveway, connecting its property with Ramp L. On December 30, 1975 the Department returned the application with a letter, suggesting that the plan be revised so that ingress to the property would be from Ramp L and egress would be onto Route 46. The Department, in effect, denied Muscarelle's application for ingress directly to the property from Route 46.

On January 8, 1976 Bingham resubmitted Muscarelle's original plan and requested that the Department review the denial of its application. Thereafter a meeting was held between representatives of the Department and Muscarelle at which it was agreed that a consulting engineer would be employed to analyze traffic conditions relating to the Muscarelle property. After the study was completed the Department, by letter dated November

19, 1976, again notified Muscarelle that an ingress driveway directly from Route 46 would not be allowed and submitted a suggested driveway design with both the ingress and egress driveways located at the eastern end of the property along Ramp L. Muscarelle thereafter submitted an application for an access permit which was consistent with the Department's plan. This revised application for access was approved by the Department and thereafter, on November 29, 1976, an access driveway permit issued to Muscarelle.

Muscarelle did not appeal from the denial by the Department on December 30, 1975 of its application for access seeking an ingress driveway directly from Route 46, or from the reaffirmance of that denial by the Department on November 19, 1976. Instead, on July 12, 1977 Muscarelle instituted this action in lieu of prerogative writs to compel the State to institute condemnation proceedings to fix compensation for the damages it sustained as a result of an alleged compensable taking of access rights to its property. The State denied that it was under any further duty to compensate Muscarelle and claimed, by way of separate defenses, that (1) there was no compensable taking of Muscarelle's property in a constitutional sense so as to warrant the payment of additional compensation to it; (2) the action was barred by *res judicata* and collateral estoppel by virtue of the consent judgment entered in the prior condemnation proceeding, and (3) Muscarelle's proper remedy was by appeal to the Appellate Division from the final decision of the Department denying its application for ingress directly from Route 46.

The trial court first tried the issues of *res judicata* and collateral estoppel as a bar to the action, leaving to a later date the issue of whether or not the action of the State in restructuring the highway intersection, including the construction of Ramp L, constituted a compensable taking. At the conclusion of the proofs presented at the first hearing the trial judge found:

1. The condemnation complaint was silent on any access rights concerning Route 46.

2. The State, prior to the 1969 hearing and thereafter, actively pursued with the plaintiff possible alternative methods of access to and from Route 46. The

State always took the position that ingress was available though with some difficulty.

3. The commissioners precluded any consideration of the limitation of access from Route 46 in arriving at an award. Although witnesses Oesmann and Miller suggested the opposite, their recollection was very questionable. By comparison, witness Rodgers specifically recalled a ruling by Chairman Loeb barring such considerations (although Rodgers conceded that he prepared his witnesses to make the attempt). Furthermore, a comparison of the plaintiff's damage estimate of approximately $290,000 compared to the State estimate of $77,000 and then finally compared to the award of $106,000, substantiates the conclusion that the access issue was not considered. It is also relevant in this regard that it was the State which appealed the $106,000 award.

4. The plaintiff at the time of the settlement of the State's appeal continued to negotiate the access problem all as advised in a memorandum reflecting the plaintiff's attorney's decision at the time of the settlement.

The trial judge thereupon held that neither collateral estoppel nor *res judicata* barred this action. He also held that this action was properly instituted by a complaint in lieu of prerogative writs in the Law Division rather than by a direct appeal to the Appellate Division, since there was no evidence of any administrative proceeding having been held or record made from which an appeal could be taken.

The trial then continued on the issue of whether the State's action in realigning the interchange, including the construction of Ramp L, constituted a compensable taking. Following the presentation of extensive proofs the trial judge found that as a result of the State's action there was an unreasonable denial of access to the Muscarelle property, entitling Muscarelle to compensation. The resultant judgment (1) ordered the State to institute a compensation proceeding to fix compensation to be paid Muscarelle for the taking of its right of access; (2) determined that the date of the taking was December 30, 1975, when the State first gave an indication that Route 46 accessibility would be precluded, and (3) awarded Muscarelle attorney's fees of $7,500 and expenses of $4,560.60. This appeal followed.

█ Preliminarily, there is a critical issue as to whether Muscarelle should have appealed the Department of Transportation's denial of its application for access directly to the Appellate Division rather than instituting this action in the Law Division by a complaint in lieu of prerogative writs. This action arises

solely as a result of the Department's denial on December 30, 1975 of Muscarelle's application for a direct ingress driveway to its property from Route 46. The denial by the Department constituted a final decision of an administrative agency and therefore the exclusive method for review of that action was by a direct appeal to the Appellate Division. The Department's final decision or action was reviewable as of right by appeal to the Appellate Division (*R.* 2:2–3(a)(2)), under our special constitutional structure. *N.J.Const.* (1947), Art. VI, § V, par. 4. *Central R. R. Co. v. Neeld,* 26 *N.J.* 172, 184–185 (1958), *cert.* den. 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.*2d 1371 (1958); *Johnson v. N. J. State Parole Bd.,* 131 *N.J.Super.* 513, 517–520 (App.Div.1974), certif. den. 67 *N.J.* 94 (1975); *Princeton First Aid & Rescue Squad, Inc. v. Civil Rights Div.,* 124 *N.J.Super.* 150 (App.Div. 1973), certif. den. 63 *N.J.* 555 (1973).

In *Central R. R. Co. v. Neeld, supra,* referring to the objective of the 1948 court rules implementing the constitutional requirement for review, hearing and relief in the Superior Court, in lieu of the superseded prerogative writs (*N.J.Const.* (1947), Art. VI, § V, par. 4), Justice Jacobs pointed out that:

> In 1948 this court adopted its implementing rules which sought to avoid the problems of the prerogative writ practice and to provide simple and expeditious modes of judicial review from administrative action and inaction. The rules perpetuated none of the former procedural distinctions resting on the nature of the relief sought and their wholesome design was clear; they contemplated that every proceeding to review the action or inaction of a local administrative agency would be by complaint in the Law Division * * * and that every proceeding to review the action or inaction of a state administrative agency would be by appeal to the Appellate Division . . .
> [26 *N.J.* at 184–185]

More recently, in *Equitable Life Mtg. Co. v. N. J. Div. of Taxation,* 151 *N.J.Super.* 232 (App.Div.1977), certif. den. 75 *N.J.* 535 (1977), we held that:

> . . . It is first obvious that despite the nomenclature with which Equitable has attempted to characterize its grievance in this action, the unavoidable fact nevertheless remains that the basis of that grievance is action taken by a state administrative agency, namely, a tax assessment alleged to be procedurally defective. It is fundamental, therefore, and a matter of state constitutional imperative that challenge of that action be sought by way of a review in lieu of prerogative writs. *N.J.Const.* (1947), Art. VI, § V, par. 4. It is moreover the mandate of the implementing rules of practice in allocating the business of the

courts that such review be initiated in this court, and not in the trial division of the Superior Court. *R.* 2:2–3(a)(2). And *see, e. g., Central R. R. Co. v. Neeld*, 26 *N.J.* 172, 185 (1958), *cert.* den. 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.2d* 1371 (1958); *Princeton First Aid v. Div. on Civil Rights*, 124 *N.J.Super.* 150, 152 (App.Div. 1973), certif. den. 63 *N.J.* 555 (1973).

[151 *N.J.Super.* at 237]

■ Muscarelle not only failed to appeal to the Appellate Division but also failed to institute its prerogative writs action until July 12, 1977—more than 1½ years after the Department's decision on December 30, 1975 and more than six months after the Department's reaffirmance of that decision on November 19, 1976. Since Muscarelle failed to comply with the time limitation of *R.* 2:4–1(b), which is both mandatory and jurisdictional (*see In re Pfizer*, 6 *N.J.* 233, 239 (1951); *cf. State v. Fletcher*, 174 *N.J.Super.* 609 (App.Div.1980)), the trial court lacked jurisdiction over this matter. Therefore, the judgment must be reversed and the complaint dismissed.

■ Beyond this, we are satisfied that the judgment must also be reversed because Muscarelle's claim for damages allegedly sustained by reason of a denial of access was properly includable in the prior condemnation proceeding and, consequently, this present action for such damages is barred by the doctrine of *res judicata*. The gravamen of Muscarelle's action is that the Department's denial of its application for direct ingress to its property from Route 46 constituted a taking of its property without just compensation. The claim relates directly to and arises out of the realignment of the intersection of Routes 23, 46 and 80, particularly the construction of Ramp L, and the 1966 condemnation of Muscarelle's property. On May 1, 1969, when that condemnation hearing commenced, the construction of the highway interchange, including Ramp L, had been completed. At that time Muscarelle was aware of the potential access and traffic hazard problems created by the State's action in condemning a portion of its property and the realignment of the highway intersection, including the construction of Ramp L. The entry of the consent judgment in 1973 constituted an adjudication on the merits and therefore, precluded Muscarelle from receiving any other damages by virtue of the State's

action. By this suit, Muscarelle, in effect, is seeking now to reopen that proceeding and force the State to revalue the damages sustained by such taking.

 The law is clear that "where only part of an owner's land is taken he is entitled to be compensated not only for the value of the land taken but also for any diminution in the value of his remaining land which may be attributed to the taking." *Ridgewood v. Sreel Investment Corp.*, 28 *N.J.* 121, 125 (1958). However, all damages which affect a condemned property must be alleged at the initial condemnation hearing. In *State Highway Com'n v. National Fireproofing Corp.*, 127 *N.J.L.* 346 (E. & A.1941), the court emphasized:

When land is taken under proceedings in eminent domain the owner is entitled to recover for all damages, present and prospective, which may be known or may reasonably be expected to result from the construction and maintenance of the improvement in a proper and legal manner *since there cannot be successive proceedings.*
[at 351; (emphasis added)]

 It is also settled that a consent judgment has the same *res judicata* effect as any other judgment. *See Kelleher v. Lozzi*, 7 *N.J.* 17, 25–26 (1951); *Gray v. Cholodenko*, 39 *N.J.Super.* 406, 409 (App.Div.1956), aff'd 22 *N.J.* 602 (1956); *Bartholdi v. Dumbeky*, 37 *N.J.Super.* 418, 422–423 (App.Div.1955), certif. den. 20 *N.J.* 305 (1956). See, also, Annotation, "Modern Views of State Courts as to Whether Consent Judgment is Entitled to *Res Judicata* or Collateral Estoppel Effect," 91 *A.L.R.*3d 1170, 1173, 1176–1177 (1971). The preclusive effect of *res judicata* applies not only to matters which were raised in a prior action but also to matters which could have been raised. *See Massari v. Einsiedler*, 6 *N.J.* 303, 313 (1951); *Restatement, Judgments* 2d (Tent. Draft No. 5, 1978), § 61 at 139. Since Muscarelle's claim for the additional damages allegedly sustained to the property as a result of the denial of reasonable access was a proper item of damage in the prior condemnation proceeding, the claim should not have been held in abeyance. Rather, it should, under the "single controversy" doctrine, have been presented at that proceeding. *See Tevis v. Tevis*, 79 *N.J.* 422, 434 (1979); *Falcone v. Middlesex Cty. Med. Soc.*, 47 *N.J.* 92, 93 (1966); *Wm. Blanchard*

*Co. v. Beach Concrete Co., Inc.*, 150 *N.J.Super.* 277, 292–294 (App.Div.1977), certif. den. 15 *N.J.* 528 (1977).

■ Furthermore, we disagree with Muscarelle's argument that the prior condemnation award does not act as a bar to this action because the commissioners allegedly excluded all testimony which related to access damages. Whether the commissioners considered such evidence or not is immaterial. The important point is that if they did not, as the trial judge here found, Muscarelle should have exercised its right of appeal and challenged this ruling in the condemnation appeal in the Superior Court. Muscarelle, however, chose not to do so, settling the case instead. Certainly Muscarelle cannot now maintain this action for additional damages.

Accordingly, the judgment below is reversed and the complaint dismissed. In view of our decision, we do not reach (1) the issue as to whether the denial of direct access to Muscarelle's property from Route 46 constituted a compensable taking or (2) Muscarelle's challenges to the valuation date fixed by the trial court and the adequacy of the award of counsel fees and costs.

Reversed.