**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1764-23

ETHEL ENOCH,

    Plaintiff-Appellant,

v.

ESTHER JEAN,

    Defendant-Respondent.

_____

Submitted December 10, 2024 – Decided December 24, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0735-21.

Rinaldo and Rinaldo Associates, LLC, attorneys for appellant (Matthew T. Rinaldo, of counsel and on the briefs).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondent (H. George Avery, of counsel and on the brief; Erica E. Bross, on the brief).

PER CURIAM

Plaintiff Ethel Enoch appeals from the January 8, 2024 Law Division order granting defendant Esther Jean summary judgment and dismissing Enoch's complaint with prejudice. After reviewing the record in light of the parties' arguments and governing legal principles, we reverse and remand for further proceedings.

I.

We view the following facts established in the summary judgment record in the light most favorable to plaintiff, the non-moving party. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). On November 4, 2019, Enoch was in an automobile accident while driving in East Orange. Enoch alleged she sustained severe and permanent injuries because Jean negligently drove into her vehicle. On March 1, 2021, Enoch filed an automobile negligence complaint against Jean in Union County. Enoch's complaint included a Rule 4:5-1 certification, asserting that "[n]o other action . . . [wa]s contemplated." On July 28, Jean filed an answer denying negligence. Jean's answer also included a Rule 4:5-1 certification, asserting that "the matter in controversy [wa]s not the subject of any other pending action in any other court."

On August 18, Jean, a resident of Pennsylvania, filed an automobile negligence complaint in federal district court, alleging Enoch had negligently

caused the accident. Jean maintained she suffered severe and permanent injuries. Jean's civil complaint cover sheet failed to include, in the section regarding related cases, that Enoch had a pending state action. Jean also did not reference the pending state action in her complaint. On February 11, 2022, Enoch filed an answer denying negligence. Enoch's answer also failed to disclose the pending state action.

In September 2023, Jean moved to intervene in the Union County action, which she withdrew shortly after filing. Contemporaneously, Jean settled her federal lawsuit with Enoch's insurance carrier, Palisades Insurance Company, for $15,000. On October 12, Jean signed a release, which provided that "th[e] settlement [wa]s a compromise of a doubtful and disputed claim and that the payment [wa]s not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability [wa]s expressly denied." Enoch did not sign the release. Thereafter, the federal court administratively dismissed Jean's complaint. On November 11, the federal court entered a stipulation of dismissal with prejudice.

Subsequently, Jean moved for summary judgment to dismiss Enoch's complaint. On January 8, 2024, after argument, the trial court issued an order accompanied by a written statement of reasons granting Jean's motion for

summary judgment. The court found, "Enoch turned into the path of . . . Jean." It determined Enoch's settlement resulted in a payment to Jean in the federal court action, which "was an acknowledgement that . . . Enoch was responsible and legally liable." The court concluded Enoch's state action was "identical" to the federal action and that res judicata barred the state action because "the second action [wa]s merely a repetition of the first." The court also found dismissal of Enoch's claims was warranted under the entire controversy doctrine. Finally, it found judicial estoppel barred the state action because Enoch "assert[ed] a contradictory position as compared with the [d]istrict [c]ourt case." The court reasoned Enoch "chose to admit liability" in the federal action and "that [wa]s a final judgment on the merits preventing litigation."

On appeal, Enoch contends reversal is warranted because the court erroneously granted Jean summary judgment pursuant to: res judicata; the entire controversy doctrine; and judicial estoppel.

II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda

4                                                                      A-1764-23

Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 415-16 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## III.

We first address Enoch's contentions that the court erred in granting summary judgment and dismissing her complaint under the entire controversy doctrine because: she had filed the first action; made no admission of negligence in Jean's subsequent federal action; never released her claims against Jean; and received no adjudication on the merits. After reviewing the record under the entire controversy doctrine's principles, we agree.

The entire controversy doctrine "has three fundamental purposes: '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'" Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). "[B]ecause the entire controversy doctrine

5

is an equitable principle, its applicability is left to judicial discretion . . . ." Francavilla v. Absolute Resols. VI, LLC, 478 N.J. Super. 171, 179 (App. Div. 2024) (alteration in original) (quoting Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995)). The application of the doctrine "is fact sensitive and dependent upon the particular circumstances of a given case." 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 236 (App. Div. 2011). "The entire controversy doctrine 'stems directly from the principles underlying the doctrine of res judicata or claim preclusion.'" Bank Leumi, 243 N.J. at 227 (quoting Prevratil v. Mohr, 145 N.J. 180, 187 (1996)); see also Long v. Lewis, 318 N.J. Super. 449, 459 (App. Div. 1999) ("The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name.").

Rule 4:30A codifies the entire controversy doctrine, stating in relevant part that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Rule 4:5-1(b)(2) provides that "[e]ach party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or . . . whether any other action . . . is contemplated." The Rule provides "a continuing obligation . . . to file and serve on all other parties and with the court an amended

6

certification if there is a change." R. 4:5-1(b)(2). "If a party fails to comply . . . , the court may impose an appropriate sanction." Ibid.

"Because a violation of the entire controversy doctrine may result in the preclusion of a claim, a court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate the claim." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 241 (App. Div. 2002). Rule 4:30A grants a court the authority to create a safe harbor in appropriate cases. The doctrine is relaxed where requiring joinder is unfair.

It is undisputed Enoch filed the state action first, and Jean, approximately six months later, filed the subsequent federal action while the state lawsuit was pending. Jean failed to comply with Rule 4:5-1(b)(2) because she did not amend her state court answer to provide notice of her federal complaint and did not disclose this action in her federal pleading. The record demonstrates Enoch did not violate the entire controversy doctrine by failing to join a claim; thus, she should not be precluded from a fair opportunity to adjudicate her negligence claim on the merits.

The doctrine "does not require dismissal when multiple actions involving the same or related claims are pending simultaneously." Kaselaan & D'Angelo

Assocs. v. Soffian, 290 N.J. Super. 293, 299 (App. Div. 1996). "Although efficient judicial management may be more complex when a related case is pending in a federal court or in the court of another state, our courts also have appropriate means to address those situations." Id. at 300. In fact, where it would be inappropriate for both cases to proceed simultaneously, "New Jersey has long adhered to 'the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.'" Sensient Colors Inc. v. Allstate Ins. Co., 193 N.J. 373, 386 (2008) (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978)).

We note Enoch highlights that Jean cites no authority that required Enoch to have joined or consolidated her first-filed state claims in the federal action. Jean's assertion that Fed. R. Civ. P. 13(a)(1) required Enoch to assert her negligence claim as a counterclaim in the federal action is unsupported, as an exception to the compulsory claim requirement exists. Fed. R. Civ. P. 13(2)(A) specifically states that "[t]he pleader need not state the claim . . . if . . . when the action was commenced, the claim was the subject of another pending action." Thus, the federal rules do not support the preclusion of Enoch's negligence action for failing to file a counterclaim, as her state action was filed and pending.

A-1764-23

Further, Jean does not refute that she failed to disclose Enoch's pending state action in the federal action.

Arguably, Jean's failure to comply with Rule 4:5-1(b)(2), the timing of her September 2023 motion to intervene and subsequent withdrawal shortly thereafter on October 2, and her settlement of the federal action on October 12, indicate sharp litigation practice by Jean. Such practice is in direct contradiction with the entire controversy doctrine's equitable principles. We recognize that "there should not be a mechanistic application of the entire controversy doctrine." J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 459 (App. Div. 2015). "Rather, courts should carefully examine the interests of the parties, expenditure of judicial resources, and any procedural mechanisms available to achieve a just result." Ibid. The record does not reflect that Enoch engaged in calculated, manipulative claim splitting. We, therefore, agree with Enoch that the entire controversy doctrine's principles of fairness dictate reinstatement of her claims. See R. 4:5-1(b)(2). For these reasons, we part ways with the court's decision granting Jean summary judgment under the entire controversy doctrine and conclude reinstatement of Enoch's negligence action is warranted for a resolution on the merits.

A-1764-23

We next turn to address Enoch's related res judicata argument that the federal court's entered stipulation of dismissal was not an adjudication of the parties' claims on the merits that would bar the present action. The record reveals the federal court did not substantively adjudicate Jean's negligence claim. As the Palisades' settlement release specifically provided, it "[wa]s not to be construed as an admission of liability." Further, Enoch did not sign the release, and Jean does not contend Enoch controlled or consented to the settlement.

We recognize "[t]he doctrine of res judicata 'contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation.'" Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 172 (App. Div. 2000) (italicization omitted) (quoting Lubliner v. Bd. of Alcoholic Beverage Control 33 N.J. 428, 435 (1960)). "[F]or res judicata to apply, there must be (1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318 (App. Div. 2002). "[A] consent judgment has the same res judicata effect as any other judgment." Joseph L. Muscarelle, Inc. v. State, by Transp. Dep't, 175 N.J. Super. 384, 395 (App. Div. 1980) (italicization omitted), appeal dismissed, 87 N.J. 321 (1981).

"A consent judgment has been defined as an agreement of the parties under the sanction of the court as to what the decision shall be." Midland Funding, L.L.C. v. Giambanco, 422 N.J. Super. 301, 310-11 (App. Div. 2011) (quoting Stonehurst at Freehold, Section One, Inc. v. Twp. Comm. of Freehold, 139 N.J. Super. 311, 313 (Law Div. 1976)).

The doctrine of res judicata fosters "the important policy goals of 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.'" First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007) (quoting Hackensack v. Winner, 82 N.J. 1, 32-33 (1980)). The doctrine also "maintain[s] judicial integrity by minimizing the possibility of inconsistent decisions regarding the same matter." Velasquez v. Franz, 123 N.J. 498, 505 (1991). Pursuant to res judicata, "a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Ibid. Privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Allen v. V & A Bros., Inc.,

208 N.J. 114, 139 (2011) (quoting <u>Zirger v. Gen. Accident Ins. Co.</u>, 144 N.J. 327, 338 (1996)) (internal quotation marks omitted).

Here, the context of the federal court settlement is relevant to our application of res judicata's equitable principles. <u>Cf.</u> <u>Ditrolio</u>, 142 N.J. at 279 (finding when applying equitable tenets to barring a claim, it is "sound policy" to review the circumstances surrounding a settlement and concluding "a settlement or a dismissal without prejudice is a factor a court should consider."). Palisades' $15,000 settlement did not include a stipulation of Enoch's liability, and at no point in the federal action did Enoch accept responsibility for causing the accident. We are also unpersuaded by Jean's argument that Palisades' settlement for Enoch's policy limit sufficiently "implied" Enoch's liability and acts as an adjudication under res judicata. <u>See</u> <u>Muralo Co., Inc. v. Emps. Ins. of Wausau</u>, 334 N.J. Super. 282, 294 (App. Div. 2000) (recognizing that a party may agree to settle meritless claims for "nuisance value" and noting that "juries sometimes do strange things—another factor to consider in the making of the overall settlement"). Res judicata is inapplicable under the present facts because the settlement of the successive federal action cannot fairly be viewed as a final determination of Jean's negligence claim on the merits.

Jean has cited no authority for the proposition that an insurance carrier's decision to settle a subsequent lawsuit, with no admission of liability by its insured, equates to a resolution on the merits. Further, our research has not revealed authority dictating that Palisades' monetary settlement alone bars Enoch's first-filed action. Therefore, the court's application of res judicata to preclude Enoch from proceeding to fairly litigate Jean's liability is unsupported. As we conclude judicial integrity is not offended by the present case proceeding on the merits, reversal of the court's decision granting Jean summary judgment under res judicata is warranted.

Finally, we turn to address Enoch's argument that the court erroneously applied judicial estoppel. Judicial estoppel serves to preserve the "integrity of the judicial process," Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996), by prohibiting a party from advocating "a position contrary to a position it successfully asserted in the same or a prior proceeding." Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000). It is considered "an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Ali v. Rutgers, 166 N.J. 280, 287-88 (2000) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir.1996)). We agree

judicial estoppel does not bar Enoch's present action and add only the following limited comments.  R. 2:11-3(e)(1)(E).

Unquestionably, the parties were permitted to maintain negligence claims against each other.  Here, the parties brought their negligence claims in separate courts.  Again, in the federal settlement, Enoch made no admission of liability, and her insurance carrier controlled the resolution.  The record does not support a finding that Enoch successfully advanced her negligence claim in the federal action for judicial acceptance solely because Palisades decided to settle for $15,000.  Therefore, the doctrine of judicial estoppel is inapplicable.

To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1764-23