NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5867-13T2

J-M MANUFACTURING COMPANY,
INC.,

    Plaintiff-Appellant,

v.

PHILLIPS & COHEN, LLP, and
JOHN HENDRIX,

    Defendants-Respondents.

> **APPROVED FOR PUBLICATION**
>
> **December 30, 2015**
>
> **APPELLATE DIVISION**

Argued October 15, 2015 — Decided December 30, 2015

Before Judges Alvarez, Ostrer, and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0792-14.

Robert A. Assuncao argued the cause for appellant (Ansa Assuncao, LLP, attorneys; Mr. Assuncao, Steven F. Gooby, and Kenneth A. Burden, on the briefs).

Brian J. Molloy argued the cause for respondent Phillips & Cohen, LLP (Wilentz, Goldman & Spitzer, P.A., attorneys; Mr. Molloy and Willard C. Shih, of counsel and on the brief; Corinne L. McCann, on the brief).

John M. Falzone argued the cause for respondent John Hendrix (Parker Ibrahim & Berg LLC, attorneys; Mr. Falzone, on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Plaintiff J-M Manufacturing Company, Inc., (J-M) appeals the dismissal, based on the entire controversy doctrine, of its complaint. For the reasons that follow, we affirm the Law Division judge's conclusion that J-M should have pursued its causes of action in the pending California whistleblower qui tam proceeding filed under the False Claims Act (FCA), 31 U.S.C.A. §§ 3729-3732, and not in New Jersey.

I.

Defendant John Hendrix, represented by defendant Phillips & Cohen, LLP (Phillips), filed the qui tam action on January 17, 2006. The case was filed in California because J-M's headquarters are there. Hendrix alleged that J-M knowingly perpetrated a fraud upon various government purchasers in the sale of PVC pipe having only a fraction of its claimed strength.

We summarize the circumstances Hendrix, the "relator" as defined in the FCA, alleged in the qui tam final amended complaint. J-M hired Hendrix, an engineer, in July 2002, to work in its Livingston, New Jersey products assurance division. His job included technical oversight responsibilities and customer interaction regarding "the tensile strength of J-M's PVC pipe." By 2004, Hendrix "became increasingly aware that J-M's tensile strength problems were not the result of

inadvertence [in the manufacturing process], but rather were part of a larger scheme to defraud its customers . . . ."

The products were sold to numerous federal, state, and local governmental entities around the nation. In 2005, Hendrix wrote a final memorandum to his superiors expressing his concerns that the PVC pipe did not meet industry standards. He was terminated approximately a week later.

Pursuant to the FCA process, the United States government completed a years-long investigation after the qui tam complaint was filed and placed under seal. 31 U.S.C.A. § 3730(a). Once the federal government decided not to assume control of the case, Hendrix was permitted to proceed on his own. 31 U.S.C.A. § 3730(c)(3). The federal complaint was unsealed in February 2010. Needless to say, the stakes are high for all parties, because of the potential recovery authorized by the "bounty provisions" of the FCA, 31 U.S.C.A. § 3730(d), potential damage awards payable by J-M to government purchasers, 31 U.S.C.A. § 3729(a), and counsel fees payable to the prevailing parties. 31 U.S.C.A. § 3730(d).

Following a bifurcated trial in California, a jury found against J-M on forty-nine of forty-nine claims of fraud as to five exemplar plaintiffs. The California action is currently pending resolution of the second phase, which will address

damages and include non-exemplar plaintiffs. The parties disagree as to the meaning of the jury's verdict and the status of the proceedings. Suffice it to say that the federal jury's verdict was rendered November 14, 2013, and J-M's New Jersey complaint was filed shortly thereafter, on February 21, 2014.

We also summarize the relevant circumstances alleged in J-M's twenty-three-page amended complaint in this case. Attorneys from Phillips, which has offices in California, met with Hendrix in 2005. As a result of "their concerted activity, in furtherance of the litigation," J-M claims Hendrix, among other things, wrongfully removed and copied numerous confidential documents and electronic data, including trade secrets, proprietary information, and "proprietary customer order and pricing information[,]" and either kept notes of conversations with co-workers and/or secretly taped them. J-M contends Hendrix violated the specific terms of his written "Employee Secrecy Agreement," breached his fiduciary duty to his employer, committed computer related offenses, and committed "trespass to chattels." J-M alleges Phillips tortiously interfered with J-M's contractual rights and tortiously interfered with J-M's prospective economic advantage, and that both defendants conspired to harm J-M and engaged in racketeering.

Defendants' motions to dismiss pursuant to <u>Rule</u> 4:6-2(e) were granted on June 30, 2014. During oral argument, when pressed as to J-M's reason for not pursuing a counterclaim against Hendrix and Phillips in the California proceeding, no answer the court considered satisfactory was forthcoming. The judge found that the claims were compulsory counterclaims under federal and California law that should have been raised in the qui tam proceeding, and that in the alternative, the entire controversy doctrine barred the New Jersey litigation. For those reasons, he dismissed as to Hendrix.

Since Phillips's exposure was entirely derivative of Hendrix's liability, arising solely from the firm's representation of the relator, he also dismissed the counts against the law firm. The judge noted that any counterclaim pursuant to federal law could be stayed if necessary in the California case pending resolution of the qui tam matter.

J-M raises several points on appeal. We only address one, that the court erred in finding the entire controversy doctrine barred J-M's pursuit of relief in New Jersey. The remaining issues are made moot by our decision. See <u>Advanced Elec. Co., Inc. v. Montgomery Twp. Bd. of Educ.</u>, 351 <u>N.J. Super.</u> 160, 166 (App. Div.) ("A case is mooted if the disputed issue is resolved . . . . Thus, a court will not decide a case if the

issues are hypothetical, [or] a judgment cannot grant effective relief[.]" (citations omitted)), <u>certif. denied</u>, 174 <u>N.J.</u> 364 (2002).

## II.

In reviewing a <u>Rule</u> 4:6-2(e) dismissal, we employ the same standard as that applied by the trial court. <u>Donato v. Moldow</u>, 374 <u>N.J. Super.</u> 475, 483 (App. Div. 2005). Our review is limited to the "legal sufficiency of the facts alleged in the complaint." <u>Id.</u> at 482. We "assume the facts as asserted by plaintiff are true[,]" and we give the plaintiff "the benefit of all inferences that may be drawn[.]" <u>Banco Popular N. Am. v. Gandi</u>, 184 <u>N.J.</u> 161, 166 (2005) (quoting <u>Velantzas v. Colgate-Palmolive Co.</u>, 109 <u>N.J.</u> 189, 192 (1988)). Dismissal is appropriate only if "the complaint states no basis for relief and discovery would not provide one." <u>Ibid.</u>

J-M makes two arguments in support of its contention that the entire controversy doctrine does not apply to the New Jersey action despite the California proceedings. First, that the cases are not sufficiently alike in fact or in the legal theories relevant to each. Secondly, that the doctrine does not apply to simultaneous proceedings.

III.

J-M contends that its New Jersey complaint is not barred by the entire controversy doctrine because it lacks the necessary "commonality of facts" with the California case. See Alpha Beauty Distribs., Inc. v. Winn Dixie Stores, Inc., 425 N.J. Super. 94, 105 (App. Div. 2012) (quoting DiTrolio v. Antiles, 142 N.J. 253, 258 (1995)). J-M further contends that different witnesses and evidence are required and that any liability determination in the FCA case would have no impact on the New Jersey proceedings.

The entire controversy doctrine requires that a party "litigate all aspects of a controversy in a single legal proceeding." Kaselaan & D'Angelo Assocs. v. Soffian, 290 N.J. Super. 293, 298 (App. Div. 1996) (quoting Leisure Tech.-Ne., Inc. v. Klingbeil Holding Co., 137 N.J. Super. 353, 357 (App. Div. 1975)). "[A]ll claims arising from a particular transaction or series of transactions should be joined in a single action." Archbrook Laguna, LLC v. Marsh, 414 N.J. Super. 97, 105 (App. Div. 2010) (citing Brennan v. Orban, 145 N.J. 282, 290 (1996)). "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims . . . ." R. 4:30A.

The doctrine, important to our jurisprudence, was designed:

> (1) to encourage the comprehensive and conclusive determination of a legal controversy;
>
> (2) to achieve party fairness, including both parties before the court as well as prospective parties; and
>
> (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation.
>
> [Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322 (1995).]

The doctrine, however, is ultimately "one of judicial fairness and will be invoked in that spirit." Archbrook, supra, 414 N.J. Super. at 104 (quoting Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343 (1984)). Causes of action which arise out of the same transaction or transactional circumstances are considered duplicative if the "factual circumstances giving rise to the controversy itself" are the same. Brennan, supra, 145 N.J. at 290.

Here, J-M's allegations against both Hendrix and Phillips all stem from Hendrix's conduct in gathering information for the qui tam complaint, undertaken because of Hendrix's suspicion that J-M was defrauding governmental entities by its production of PVC pipe that did not meet industry standards. Both the qui tam action and this case arise out of J-M's alleged fraud and Hendrix's subsequent investigation. The information and

A-5867-13T2

documents in Hendrix's possession are the basis for the qui tam action. Even Hendrix's supposed breach of his "Employee Secrecy Agreement," or other contractual obligations as an employee, occurred in preparing for the qui tam action. Therefore, this New Jersey complaint is clearly based on the same transaction or series of transactions as the qui tam action. See Archbrook, supra, 414 N.J. Super. at 105.

Moreover, to allow the New Jersey action to proceed would result in "fragmented, multiple and duplicative litigation" that would not achieve fairness to the parties. See Mystic Isle, supra, 142 N.J. at 322. Counterclaims may be filed in qui tam litigation, although ultimately subject to dismissal to avoid indemnification or offset in light of the public policy behind the implementation of the FCA. Madden v. Gen. Dynamics Corp., 4 F.3d 827, 830-31 (9th Cir. 1993).

The federal courts have long distinguished between counterclaims seeking only indemnification, and counterclaims for independent damages which might nonetheless have the effect of indemnifying a qui tam defendant. Madden, supra, 4 F.3d at 830-31. Although qui tam defendants are not permitted to offset their liability by seeking indemnification or contribution from the relator, "[c]ounterclaims for independent damages are distinguishable, however, because they are not

dependent on a qui tam defendant's liability." Ibid. "If a qui tam defendant is found liable the counterclaims [for independent damages] can then be dismissed on the grounds that they will have the effect of providing for indemnification or contribution." Id. at 831. "On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits." Ibid. This "mechanism" is intended "to insure [sic] that relators do not engage in wrongful conduct in order to create the circumstances for qui tam suits and to discourage relators from bringing frivolous actions." Id. at 831. The causes of action against Hendrix and Phillips accrued, and became known, once the qui tam complaint was unsealed. Simply stated, J-M has the right to pursue a counterclaim in the federal proceeding, in nature no different than the complaint filed in New Jersey.

In fact in Madden, supra, 4 F.3d at 829, the defendant's counterclaim for damages was strikingly similar to the one here. It included "1) breach of duty of loyalty and breach of fiduciary duty; 2) breach of implied covenant of good faith and fair dealing; 3) violations of the California labor code; 4) libel; 5) trade libel; 6) fraud; 7) interference with economic relations; 8) and misappropriation of trade secrets." Ibid.

To allow J-M's New Jersey complaint to stand would be unfair to Hendrix while sidestepping the public policy goals behind the FCA. The FCA is designed to protect a relator, and encourage the very whistleblowing activities for which J-M seeks recovery in New Jersey.[1] Indeed, the law provides for not only a significant bounty for a relator, but also protection from employer retaliation. <u>Cell Therapeutics v. Lash Group, Inc.</u>, 586 <u>F.</u>3d 1204, 1206 (9th Cir. 2010).

J-M, the defendant in the California proceedings, should not be able to effectively indemnify itself for any portion of its qui tam liability by suing the relator and his lawyers in this state. Nor should J-M be able to sidestep the employee protection the FCA gives Hendrix by filing its claim in New Jersey. Clearly, the New Jersey litigation is being pursued to gain unfair advantage and to engage in the very forum shopping

---

[1] Prior to oral argument, J-M's counsel brought to our attention the Supreme Court's decision in <u>State v. Saavedra</u>, 222 <u>N.J.</u> 39 (2015). The case disallowed self-help in employment discrimination cases as an alternative to legal processes. It allowed the criminal prosecution for theft of documents to go forward; however, the documents in that case were individual student records removed from a school in violation of federal and state confidentiality laws. Furthermore, the Court distinguished between criminal prosecutions and retaliatory civil actions which may still be barred pursuant to a multi-factor balancing test. <u>See</u> <u>Quinlan v. Curtiss-Wright Corp</u>, 204 <u>N.J.</u> 239 (2010).

that the entire controversy doctrine is intended to avoid. See Archbrook, supra, 414 N.J. Super. at 107.

It follows that we agree with the Law Division judge that the complaint must be dismissed as to Phillips as well. J-M fails to assert a theory under which Phillips could be found liable other than for assisting or directing Hendrix's investigation.

If Hendrix's conduct was not illegal or tortious, a question dependent on the outcome of the qui tam action, Phillips cannot be held accountable for assisting or directing legal non-tortious conduct. In a civil conspiracy, the "gist of the claim is . . . the underlying wrong, which absent conspiracy, would give a right of action." Banco Popular, supra, 184 N.J. at 177-78 (quoting Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)). To impose liability for "aiding and abetting" it is "essential that the conduct of the actor be in itself tortious[.]" State, Dep't. of Treasury v. Qwest Commc's Int'l, Inc., 387 N.J. Super. 469, 482 (App. Div. 2006) (quoting §876(b) of the Restatement (Second) of Torts (1979)). If Hendrix did nothing wrong, Phillips's representation cannot be considered conduct amounting to a civil conspiracy.

The same analysis applies to J-M's other allegations of wrongdoing by Phillips. We cannot imagine a scenario, and J-M does not suggest one, in which Phillips could be held individually responsible for damages without Hendrix being first found to have been a wrongdoer. Any liability on Phillips is derivative of Hendrix's liability. We agree with the Law Division judge on the point.

Additionally, the entire controversy doctrine mandates dismissal as to Phillips when applied directly. Although Phillips is not a party to the California litigation, the complaint against Phillips arises out of the same transaction.

J-M argues it must separately sue Phillips because the law firm could not be joined in a counterclaim while acting as counsel in the qui tam action. Procedurally, however, as is the practice with counterclaims against relators, the causes of action against Phillips could be held in abeyance pending the final outcome of the qui tam action. See Cell Therapeutics, supra, 586 F.3d at 1208-09. Thereby the court most familiar with the federal proceedings and the parties could separately deal with any claims against Phillips after J-M's liability has been determined.

IV.

Alternatively, J-M contends that this action falls outside the scope of the entire controversy doctrine because it does not apply to litigation conducted simultaneously. In response, Hendrix and Phillips point out that this argument is raised for the first time on appeal. They therefore argue that we should not consider the issue as it was not plain error, is not jurisdictional in nature, nor does it involve important issues of public interest. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Under the plain error standard, where an error is "clearly capable of producing an unjust result," Rule 2:10-2, an order or judgment will be reversed. First, however, a determination must be made that an error occurred. Ibid. Since we find the judge did not err at all, his decision was not plain error. The issue is not jurisdictional in nature. However, we do consider the question to be one of sufficient importance to merit discussion.

J-M relies on Kaselaan as support for the argument that the entire controversy doctrine does not apply to simultaneous proceedings. In Kaselaan, the plaintiff filed an action in the Law Division when he already had a case arising out of the "same sequence of events" pending in federal district court. Kaselaan, supra, 290 N.J. Super. at 296. In Kaselaan, we

concluded that the entire controversy doctrine did not require dismissal where multiple actions involving the same or related claims were pending simultaneously. Id. at 299. Instead, we suggested other procedural tools to prevent any unfairness to litigants or the waste of judicial resources, such as a stay of our proceedings until the disposition of the case in federal court. Id. at 300.

But in Kaselaan, we also said: "where it would be inappropriate for both cases to proceed simultaneously, 'the general rule [is] that the court which first acquires jurisdiction has precedence in the absence of special equities.'" Ibid. (alteration in original) (quoting Yancoskie v. Delaware River Port Auth., 78 N.J. 321, 324 (1978)). Clearly, the California court was not only the first, but was for several years, the only court dealing with these parties.

Kaselaan makes the point that there should not be a mechanistic application of the entire controversy doctrine. Rather, courts should carefully examine the interests of the parties, expenditure of judicial resources, and any procedural mechanisms available to achieve a just result. See id. at 300-01.

Since Kaselaan, we have restated those principles. The decision whether to apply the entire controversy doctrine is

"ultimately 'one of judicial fairness and will be invoked in that spirit.'" <u>Archbrook</u>, <u>supra</u>, 414 <u>N.J. Super.</u> at 104 (quoting <u>Crispin</u>, <u>supra</u>, 96 <u>N.J.</u> at 343). It is not an artificial bright line rule. <u>See id.</u> at 104-05.

In <u>Archbrook</u>, the New Jersey plaintiff dismissed its counterclaim in the Georgia case, where it was the defendant, and filed suit here based on "the same transaction or series of transactions." <u>Supra</u>, 414 <u>N.J. Super.</u> at 103, 106. There was no showing that the Georgia court would have barred the counterclaim, which was equivalent to the complaint in New Jersey. <u>Id.</u> at 107. The Georgia case was tried, and the plaintiff there, defendant here, recovered a total judgment in excess of two million dollars, <u>id.</u> at 104, while the New Jersey action was pending. In <u>Archbrook</u>, we applied the entire controversy doctrine to affirm the summary judgment dismissal of the New Jersey proceedings because the case was filed to gain unfair advantage in this state, as opposed to disposing of all the claims on the merits in the Georgia proceeding.

The New Jersey plaintiff's dismissal of its counterclaim in Georgia, and attempt to litigate in New Jersey, was precisely the kind of deliberate manipulation and forum shopping that the entire controversy doctrine is intended to avoid. <u>Id.</u> at 110. We even expressed concern that the New Jersey defendant failed

to earlier move for summary judgment, possibly to gain some procedural advantage in the Georgia proceeding. Id. at 110. As we observed, equitable considerations might result in a court's refusal to apply the entire controversy doctrine because although the "parties are entitled to zealously litigate in their own best interests, they also owe the judicial system a further duty." Ibid.

Since a defendant in a qui tam proceeding has the right to pursue a counterclaim against the relator seeking money damages, and even to pursue an independent claim against third parties,[2] the circumstances approximate those in Archbrook, not Kaselaan. The concern in Kaselaan was that the plaintiff would lose his ability to have his dispute adjudicated at all. The concern in Archbrook was that the complaint was filed in New Jersey by the Georgia defendant in an effort to double the litigation expense for the Georgia plaintiff and avoid a possible negative outcome in Georgia.

Hence we conclude that J-M's reading of Kaselaan misinterprets the holding in that case. The thrust of Kaselaan, followed in Archbrook, is that the entire controversy doctrine must be applied in order to achieve fairness. The substantive question is whether application of the doctrine meets the goals

_____

[2] See Cell Therapeutics, supra, 586 F.3d at 1213.

of fairness to the parties while allowing for judicial economy and efficiency.

Having assumed that the facts as asserted by J-M are true, and drawing all inferences in its favor, we nonetheless conclude dismissal is mandated by the entire controversy doctrine. The issues are properly adjudicated in conjunction with the California qui tam proceeding. We do not reach J-M's remaining points of error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5867-13T2