**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1878-23
A-2059-23

CARMEN A. SEXTON,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY, N.J.
DEPARTMENT OF
CORRECTIONS, DEFENDANTS
MAJOR DAVIN BORG,
ADMINISTRATOR STEVEN
JOHNSON, ADMINISTRATIVE
LT. SEAN ABRAMS, VICTORIA
KUHN COMMISIONER, LEILA
LAWRENCE EEOC DIRECTOR,
TAMARA RUDROW,
ADMINISTRATOR MERVIN
GANESH, LT. UNION
REPRESENTATIVE NJLESA
MICHAEL PTASZENSKI, UNION
REPRESENTATIVE PBA 105-
RICHARD DEFAZIO, NJDOC HR
MANAGER MARIE MILLS
ROGERS, MERCER COUNTY
PROSECUTOR'S OFFICE,
DEFENDANT(S) ASSISTANT
PROSECUTOR DORIS M.
GALUCHIE, PROSECUTOR

ANGELO ONOFRI, NJ DIV. RISK
DEFENDANTS, BUREAU CHIEF
MANZER HUSSAIN, NJ DAG
CHERYL WARD, NJ DIV. RISK
EMPLOYEE NAQEEB ABIDI,
CBIZ BORDEN PERLMAN,
DEFENDANTS
OWNER/SHAREHOLDER
JEFFREY PERLMAN AKA JEFF
PERLMAN,
OWNER/SHAREHOLDER
DOUGLAS BORDEN AKA DOUG
BORDEN, EMPLOYEES/AFFILIATES,

Defendants-Respondents.

_____

Submitted October 14, 2025 – Decided January 29, 2026

Before Judges Natali and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1892-22.

Carmen A. Sexton, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondents State of New Jersey, New Jersey Department of Corrections, Sean Abrams, Davin Borg, Richard DeFazio, Steven Johnson, Victoria Kuhn, Leila Lawrence, Marie Mills-Rogers, Michael Ptaszenski, Tamara Rudrow, Mercer County Prosecutor's Office, Doris M. Galuchie, and Angelo J. Onofri (Janet Greenberg Cohen, Assistant Attorney General, of Counsel; Eric Intriago, Deputy Attorney General, on the brief).

2

Fox Rothschild LLP, attorneys for respondents CBIZ Borden Perlman, Douglas Borden, and Jeffrey Perlman (Barry J. Muller, on the brief).

PER CURIAM

These appeals, which we have consolidated for the purposes of issuing a single opinion, involve plaintiff Carmen Sexton's challenges to three orders that dismissed her civil rights and employment-related claims in which she asserted violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2, and other causes of action, against the New Jersey Department of Corrections (DOC), the Mercer County Prosecutor's Office (MCPO), the Division of Risk Management (DRM) of the Department of Treasury, CBIZ Borden Perlman, Inc. (CBIZ), and individual defendants employed by these entities.[1]  Specifically, plaintiff filed a notice of appeal under Docket No. A-1878-23, challenging a January 29, 2024 order that dismissed her claims against the CBIZ and MCPO defendants, and a

---

[1] In the operative complaint, plaintiff asserts her claims against the DOC, and individuals Davin Borg, Steven Johnson, Sean Abrams, Victoria Kuhn, Lelia Lawrence, Tamara Rudrow, Michael Ptaszenski, Richard DeFazio, Marie Mills-Rogers, and Mervin Ganesh (DOC defendants); the MCPO and individuals Doris M. Galuchie and Angelo Onofri (MCPO defendants); the DRM and individuals Manzer Hussain, Cheryl Ward, and Naqeeb Abidi (DRM defendants) (DOC, MCPO, and DRM defendants are referred to collectively as State defendants).  The suit also named CBIZ and Douglas Borden, and Jeffrey Perlman (CBIZ defendants).

February 15, 2024 order that dismissed her claims against the DOC defendants and which denied her motion to amend the complaint. She filed a separate notice of appeal under Docket No. A-2059-23, challenging a February 23, 2024, order that dismissed without prejudice her claims against the DRM defendants and Ganesh.[2]

We have considered all of plaintiff's arguments against the record, applicable standards of review, substantive legal principles and conclude they are without merit. We accordingly affirm all three orders.

I.

Plaintiff, a corrections officer with the DOC from December 23, 1995, to March 19, 2019, transferred to the New Jersey State Prison in 2013. She first commenced her claims against all but seven of the individual defendants in a since dismissed federal court action. As cogently observed by the United States Court of Appeals for the Third Circuit when affirming the District Court's order dismissing her near identical federal court complaint, see Sexton v. N.J. Dep't of Corr., No. 24-3118, 2025 WL 1482788, at *1 (3d Cir. May 23, 2025), plaintiff's action "arose out of three seemingly unrelated circumstances." Ibid.

---

[2] Ganesh, although an administrator in the DOC, was not represented by counsel for the DOC defendants. He passed away prior to the start of litigation.

First, in October of 2016, plaintiff and other DOC officers responded to a suicidal inmate. During the incident, plaintiff deployed pepper spray, ordered officers to remove the inmate without proper protective gear, and used unauthorized restraints against the inmate. Major Davin Borg of the DOC initiated an investigation into the incident, which plaintiff maintained unfairly targeted her while not properly investigating the conduct of male officers of the same or higher rank who also responded in a similar fashion to the incident. Plaintiff contended the DOC subjected her to a discriminatory disciplinary policy that segregated her in the workplace while the investigation was pending, and that she was denied her use of the employee dining area and the allotment of free meals and deprived her of overtime opportunities and mandatory CPR training. She also maintained she was subjected to prolonged abuse and discrimination based on sex and a hostile work environment that caused her to be diagnosed with post-traumatic stress disorder (PTSD) and suffer severe health and psychiatric issues requiring hospitalization. Once the investigation was complete, the DOC suspended plaintiff for four months and demoted her.

She challenged the DOC's disciplinary action before the Office of Administrative Law (OAL). The Mercer County Prosecutor's Office (MCPO) requested a thirty-day adjournment of the OAL proceedings to allow them to

investigate the incident. Plaintiff claims that MCPO conspired with the DOC to interfere with her right to seek redress in the OAL.

Second, when she sought to extend her leave and asked for accommodations and benefits to cover her extended medical care, she claims the Division of Risk Management (DRM) discriminated against her by denying those benefits.[3] Plaintiff also claims that she was requested to either resign or retire from her position in retaliation for her filing complaints with the DOC, the Division of Civil Rights (DCR), and the U.S. Equal Employment Opportunity Commission (EEOC). Plaintiff also alleges that she was harassed by CBIZ Borden Perlman, Inc. (CBIZ) employees.[4]

Third, plaintiff maintains in 2020, the MCPO maliciously prosecuted her for unlawful possession of a handgun. In that incident, plaintiff called the Hamilton Township police to report a suspicious person following her. When the police responded, she behaved erratically, necessitating hospitalization. She

_____

[3] The DRM is a part of the Department of the Treasury that investigates claims against the State and its agencies and ensures cost effective administration of claims.

[4] CBIZ is an insurance and risk management agency plaintiff claimed were acting on behalf of the DOC to investigate her insurance claims. She maintained employees of CBIZ followed her and caused property damage to her vehicle when they purportedly slashed her tires.

advised officers she had a handgun in her possession, and officers later learned she did not have the appropriate permit to carry the firearm. Plaintiff claims she was denied her right to due process after she was arrested and indicted. Because of her arrest, the DOC began removal proceedings. Plaintiff later pled guilty to the charge and entered the Pre-Trial Intervention program (PTI).

In December 2021, plaintiff filed a pro se civil action in federal court against numerous defendants, including the DOC and other state agencies, as well as individuals who were employed by those state entities, alleging violations of various federal and state laws (Sexton I). While that federal court action was pending, plaintiff filed a similar complaint with state and federal claims in the Mercer County Superior Court against the same state entities and mostly the same individuals on October 28, 2022 (Sexton II). Her state court complaint was removed to federal court based on the asserted federal claims, but plaintiff moved to remand the case. The District Court at first denied plaintiff's request for remand, and while it acknowledged the similarity with Sexton I, the issue of potential claim preclusion was not before it. See Sexton v. N.J. Dep't of Corr., Civ. No. 22-6901, 2023 WL 5311459 (D.N.J. Aug. 17, 2023) (slip op. at 2 n.1).

A-1878-23

Plaintiff then moved to amend her complaint in Sexton II to bring only state claims, which the court granted. See Sexton v. N.J. Dep't of Corr., Civ. No. 22-6901, 2023 WL 6810421 (D.N.J. Oct. 16, 2023) (slip op. at 1). Without original jurisdiction over the federal claims, the court declined to exercise its supplemental jurisdiction over the remaining state claims and remanded the matter. Id. at 2.

The Superior Court ordered plaintiff to file an amended complaint in Sexton II by November 16, 2023. She instead moved for a stay on November 18, 2023, pending her appeal of the remand. Her motion was denied.

Meanwhile, the District Court considered Sexton I, exercising its supplemental jurisdiction over the state claims, and dismissed her claims without prejudice on various grounds. See Sexton v. Dep't of Corr., Civ. No. 21-20404, 2023 WL 8868810 (D.N.J. Dec. 22, 2023) (slip op. at 4-12). It invited her to file an amended complaint to cure the deficiencies. Id. at 14.

The CBIZ defendants moved to dismiss Sexton II on January 2, 2024, and MCPO joined the motion. On January 18, 2024, plaintiff moved to amend her complaint. Her amended complaint alleged violations of the LAD, CRA, and various employment laws and sought injunctive relief from malicious prosecution, relief from disciplinary actions taken against her in the OAL, the

tolling of the statute of limitations, and $500 million in damages for emotional and psychological harm, loss of income and wages, and loss of personal property. DOC defendants opposed plaintiff's motion and requested the court dismiss the claims against them.

In a January 29, 2024, order, the court dismissed the Sexton II claims against the CBIZ and MCPO defendants after it concluded those claims were barred under the entire controversy doctrine (ECD), noting that Sexton I was still active and addressed her state claims. The court also dismissed plaintiff's claims against the DOC defendants as barred under the two-year statute of limitations and found the State defendants were not "persons" subject to suit under the CRA in a February 15, 2024, order. Finally, on February 23, 2024, the court dismissed the claims against the DRM defendants for lack of prosecution. Plaintiff filed a motion for "exceptional circumstances" on February 23, 2024, but withdrew the motion before it could be heard or decided.

With Sexton II dismissed, plaintiff filed another amended complaint in Sexton I on February 22, 2024, but she chose to only bring her federal claims. After plaintiff filed these appeals and the parties completed briefing, the United States District Court for the District of New Jersey dismissed Sexton I with prejudice. Sexton v. N.J. Dep't of Corr., Civ. No. 21-20404, 2024 WL 4615763,

at *19 (D.N.J. Oct. 30, 2024). The court found that because she excluded her LAD and CRA claims, she had effectively "abandoned" them. Id. at 4 n.9. Nevertheless, the court considered plaintiff's "multiple references" to state law tort claims and dismissed them with prejudice for failure to comply with the notice requirement of New Jersey Tort Claims Act, N.J.S.A. 59:8-8. Id. at 17. The Third Circuit affirmed. See Sexton v. N.J. Dep't of Corr., No. 24-3118, 2025 WL 1482788, at *3 (3d Cir. May 23, 2025).

II.

Plaintiff argues the court erred in dismissing her complaint against CBIZ and MCPO defendants in the January 29, 2024, order based on the ECD because she brought her claims "in separate discrete actions that are relate[d] and relate back to a common interest employment contract breach that caused the work injury." She further maintains that based on events that occurred on separate, distinctive dates, and that defendants have not established that there was a final, valid judgement on the merits, that the parties in a later action were identical or in privity with the parties in the prior action, and that these claims grew out of the same transaction or occurrence as the prior claim.

The court found that plaintiff had made "the same allegations in this case . . . that were also part of the [f]ederal case" and that the allegations "arise out

of the same related series of events, transactions, and factual circumstances." In granting the motions to dismiss the claims against MCPO defendants and CBIZ defendants, the court found that "it's clear that the entire controversy doctrine would bar the pursuit of the claims here. And the rationale would be the same with respect to the res judicata." We agree with the court that plaintiff's claims against MCPI and CBIZ defendants are bound by the ECD

Review of the "application of the entire controversy doctrine requires a mixed standard of review." Francavilla v. Absolute Resols. VI, LLC, 478 N.J. Super. 171, 178 (App. Div. 2024). A court reviews "de novo the law guiding the trial court's determination as to the entire controversy doctrine." Ibid. (citing Higgins v. Thurber, 413 N.J. Super. 1, 5-6 (App. Div. 2010)). "However, the decision to apply the doctrine, as an equitable principle, 'is left to judicial discretion.'" Ibid. (quoting 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011)). Thus, a court's decision to apply the doctrine will not be disturbed unless it was "'manifestly unjust' under the circumstances." Ibid. (quoting Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011)).

The entire controversy doctrine "requires whenever possible all phases of a legal dispute to be adjudicated in one action. At a minimum, all parties to a

suit should assert all affirmative claims and defenses arising out of the underlying controversy." Prevratil v. Mohr, 145 N.J. 180, 187 (1996) (citing Cogdell v. Hosp. Ctr., 116 N.J. 7, 15 (1989)). The doctrine is codified in the court rules, which provide that:

> [n]on joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by Rule 4:64-5 (foreclosure actions) and Rule 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).
>
> [R. 4:30A.]

The doctrine's central goal is "to assure that all aspects of a legal dispute occur in a single lawsuit." Olds v. Donnelly, 150 N.J. 424, 431 (1997) (citing DiTrolio v. Antiles, 142 N.J. 253, 267 (1995); Prevratil, 145 N.J. at 187). Parties are thus required to "bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and crossclaims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts.'" Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 885 (3d Cir. 1997) (quoting Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 289 (1995), overruled on other grounds by Olds, 150 N.J. at 440-43).

"The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name." Long v. Lewis, 318 N.J Super. 449, 459 (App. Div. 1999) (citing Culver v. Ins. Co. of N. Am., 115 N.J. 451, 463-64 (1989)). Claim preclusion requires under both federal and state law that:

> (1) the judgement in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 412 (1991) (citing Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981); In re Energy Coop., Inc., 814 F.2d 1226 (7th Cir. 1987)).]

The entire controversy doctrine "does not require dismissal when multiple actions involving the same or related claims are pending simultaneously." Kaselaan & D'Angelo Assocs. v. Soffian, 290 N.J. Super. 293, 299 (App. Div. 1996). Judicial efficiency may become complicated where a matter is pending in federal court and state court, but "'the New Jersey action may, as a matter of sound discretion, be stayed by our courts until the prior action has been adjudicated.'" Id. at 300 (quoting Am. Home Prods. v. Adriatic Ins., 286 N.J. Super. 24, 33 (1995)). If "it would be inappropriate for both cases to proceed simultaneously, 'the general rule [is] that the court which first acquires

13

jurisdiction has precedence in the absence of special equities.'" Ibid. (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978)).

However, "when a federal suit is adjudicated on its merits, then the potential arises for a dismissal of the second suit on entire controversy grounds." Archbrook Laguna, LLC v. Marsh, 414 N.J. Super. 97, 108 (App. Div. 2010). See Blazer Corp. v. N.J. Sports & Exposition Auth., 199 N.J. Super. 107, 113 (App. Div. 1985) (finding claims precluded in state court because federal court's dismissal of state claims based on statute of limitations was decided on the merits, not for want of jurisdiction). Where the first suit resolves while the "successive suit" is pending, arguments against applying the entire controversy doctrine may be rendered moot. Archbrook, 414 N.J. Super. at 109 n.4.

We have distinguished between cases in which simultaneous claims are brought to protect a party's right to adjudicate his or her claims should one court dismiss on jurisdictional grounds and cases that are brought "in an effort to double the litigation expenses . . . and avoid a possible negative outcome" of the matter. J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 460 (App. Div. 2015). There the court found that simultaneous litigation is improper when it "is being pursued to gain unfair advantage and to engage in the very forum shopping that the entire controversy doctrine is intended to avoid." Id. at 457

14

(citing Archbrook, 414 N.J. at 107). Cf. Milone v. Nissan Motor Corp., 250 N.J. Super. 371, 375-76 (App. Div. 1991) (ECD does not preclude claims in state court when a federal court declined to exercise its supplemental jurisdiction over those claims). Thus, "[t]he substantive question is whether the application of the doctrine meets the goals of fairness to the parties while allowing for judicial economy and efficiency." J-M Mfg. Co., 443 N.J. Super. at 460-61.

Here, the complaint in Sexton II describes the same facts as in Sexton I and, more crucially, brings the same state claims. There was no basis for plaintiff to file duplicative and simultaneous lawsuits. Unlike in Milone, the District Court did not decline to exercise supplemental jurisdiction over plaintiff's state claims. In fact, in Sexton I it expressly exercised its jurisdictional authority over those claims. When Sexton II was dismissed in state court, it was done with the full knowledge that the District Court was still exercising its supplemental jurisdiction over the same claims in Sexton I, and it was plaintiff who subsequently abandoned the claims in Sexton I. Thus, the court properly concluded the entire controversy doctrine precluded plaintiff from bringing essentially the same claims in both courts. Finally, as in Archbrook, the arguments against applying the doctrine for lack of a final, valid judgment were mooted when the federal court ruled on Sexton I. Finally, even

if the ECD did not preclude plaintiff's claims, the court properly dismissed these claims against the CBIZ and MCPO defendants for the reasons detailed in sections IV and V.

III.

Plaintiff next contends the court erred in dismissing her CRA claims against the DOC defendants in its February 15, 2024 order based on absolute prosecutorial immunity or qualified immunity. She alleges the DOC Defendants brought an unlawful disciplinary action against her to recover her employment property and wages and conspired with MCPO defendants to stall plaintiff's OAL case by unlawfully prosecuting her without cause. Plaintiff argues that because DOC and MCPO's actions were without cause against her federally protected rights, they are not protected by their official titles. She maintains the court erred because defendants have asserted only blanket rights to immunities insufficient to actually apply those immunities, and that the court should have found there was a genuine issue of fact.[5]

In dismissing plaintiff's claims against DOC defendants, the court found that "the State and the arms of the State are not persons, nor [are] their

---

[5] The State defendants also note the District Court concluded they had immunity under the Eleventh Amendment. See Sexton v. N.J. Dep't of Corr., Civ. No. 21-20404, 2024 WL 4615763, at *6-8 (D.N.J. Oct. 30, 2024).

16

employees, within the meaning of the CRA, and thus are immune from this suit" The court noted that this immunity also applied to the MCPO defendants, even though claims against them had already been dismissed. We agree with the court's conclusions.

Questions of interpretation of statutes are reviewed de novo since they involve the examination of legal issues. State in the Int. of K.O., 217 N.J. 83, 91 (2014) (citing McGovern v. Rutgers, The State Univ., 211 N.J. 94, 107-08 (2012)). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Dismissal of a complaint for failure to state a claim is reviewed de novo. Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 69 (App. Div. 2023). "A reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)). The complaint is properly dismissed where "it has failed to articulate a legal basis entitling plaintiff to relief." Sickles v.

Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005) (citing Camden Cnty. Energy Recovery Assocs., L.P. v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64 (App. Div. 1999)).

A court's denial of a motion to amend is subject to review of an abuse of discretion. Grillo v. State, 469 N.J. Super. 267, 275 (App. Div. 2021) (quoting Port Liberte II Condo Associations Inc v. New Liberty Residential Urban Renewal Company, 435 N.J. Super. 51, 62 (App. Div. 2014)). "In exercising that discretion, a court must go through 'a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. (quoting Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006)).

The CRA provides that:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

A-1878-23

Because the CRA is "modeled off of the analogous Federal Civil Rights Act," courts may find guidance in interpreting the CRA and its immunities "[t]he interpretation given to parallel provisions of Section 1983." Tumpson v. Farina, 218 N.J. 450, 474 (2014). Under the federal statute, the State and state officials acting in their official capacities are afforded immunity because they are not considered "persons" under the statute. Bernstein v. State, 411 N.J. Super. 316, 335 (App. Div. 2010) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). To determine whether a state agency is protected by sovereign immunity, the court must consider whether the "'state is the real party in interest,'" which involves three factors: "(1) whether the money to pay for the judgment would come from the state; (2) the status of the agency under state law; and (3) what degree of authority the agency has." Est. of Lagano v. Bergen Cnty. Prosecutor's Off., 769 F.3d 850, 857 (3d Cir. 2014) (quoting Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989)).

Courts have employed this analysis to find that the DOC is a state agency and that both it and its employees, when acting in their official capacity, are protected by immunity, reasoning that any judgments against it would come from the state treasury, that the DOC is like most other executive agencies in how its Commissioner is appointed and serves, and that it has "relatively little

autonomy for the prison system." Grabow v. S. State Corr. Facility, 726 F. Supp. 537, 539 (D.N.J. 1989). Because the DOC cannot exist without the authorization of the State, it is a "part of the state for purposes of" sovereign immunity and are not "persons" subject to suit under 42 U.S.C. § 1983. Ibid. This immunity extends to employees who acted in their official capacities, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).

Here, the DOC defendants, as part of the DOC and the State, are immune from suit under the CRA, as they are not considered "persons," as the trial court correctly found. The individuals, who acted in their official capacity under their respective state agencies, are similarly immune. The trial court also properly denied plaintiff's motion to amend her complaint as it would have been futile to allow further amendments, because plaintiff could not plead her claims in such a way as to overcome the immunity granted to the State defendants. See Grillo, 469 N.J. Super. at 275. Although the court dismissed plaintiff's claims against the DRM defendants and Ganesh for lack of prosecution, they are also protected by this immunity as arms of the State. See Will, 491 U.S. at 71 (citing Brandon, 469 U.S. at 471); see p. 35, infra.

IV.

Plaintiff first maintains the court erred by entering the February 15, 2024 order and dismissing her CRA, LAD, and related claims against the State defendants as time-barred based on the continuing pattern of tortious behavior and harassment she endured. Plaintiff contends that the discriminatory conduct by the State defendants occurred on April 17, 2017, and concedes that her claims are brought under the CRA and LAD but argues that it also involves employment discrimination and injury to her property rights, which is governed by the six-year limitation period.

Plaintiff also maintains her DCR claim was improperly dismissed because it was "stalled" due to a backlog in an attempt to deceive her into withdrawing her complaint. She argues that because she was tricked and her claims inadequately addressed in the administrative process, the statute of limitations should be tolled.

She further maintains that the hostile work environment continued until November 3, 2016, when disparate actions were taken against her, and therefore, the statute of limitations should not commence until that date. Finally, plaintiff maintains all defendants are implicated in her claims because their actions were performed on behalf of the named state entities to harm her and her employment

21

contract. We disagree with all of plaintiff's arguments for the reasons expressed by the court in its oral opinion as amplified below.

In dismissing the claims against the DOC defendants, the court found that a two-year statute of limitations applied to her CRA and LAD claims that began in March 2019, when Mills-Rogers, a DOC human resources manager, sent her a letter requesting her resignation. The court concluded that since plaintiff's claim was not filed until 2022, it was "beyond the statutory period." The court declined to apply the six-year statute of limitations that plaintiff argued applied in breach of contract claims, since even after a "generous reading" of the complaint, the court could not "see any contract nor any breach of contract . . . ."

"Whether a cause of action is barred by a statute of limitations is a question of law [and is] reviewed de novo." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016) (citing Est. of Hainthaler v. Zurich Com. Ins., 387 N.J. Super. 318, 325 (App. Div. 2006)). A reviewing court owes "'no deference to [the] trial judge's legal interpretations' in dismissing plaintiffs' complaint as time[]barred." Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487 (App. Div. 2018) (quoting Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 600 (App. Div. 2014)).

"Statutes of limitations, by their nature, are intended to compel plaintiffs to file their lawsuits within a prescribed time to allow defendants a fair opportunity to respond and safeguard their interests." Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 443 (2017). However, equitable tolling may be applied to the accrual date of an action because the "statute of limitations is not permitted to be used 'as a sword' by an adversary whose misconduct prevents a claimant from filing within the limitation period." Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002) (quoting Dunn v. Borough of Mountainside, 301 N.J Super. 262, 280 (App. Div. 1997)). Equitable tolling might apply, for instance, where the plaintiff "has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." Ibid. (citing U.S. v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as in the interests of justice." Ibid. (quoting Midgley, 142 F.3d at 179).

The statute of limitations for CRA claims is two years. Lapolla v. County of Union, 449 N.J. Super. 288, 298 (App. Div. 2017) (citing N.J.S.A. 2A:1-2(a)). The LAD likewise has a statute of limitations of two years. Shepherd v.

23

Hunterdon Dev. Ctr., 174 N.J. 1, 17 (2002) (citing Montells v. Haynes, 133 N.J. 282, 292 (1993)).

Typically, a tortious "cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another." Mullen v. Ippolito Corp., 428 N.J. Super. 85, 105 (App. Div. 2012) (quoting Marini v. Borough of Wanaque, 37 N.J. Super. 32, 38 (App. Div. 1955)). However, in the context of a discrimination claim, New Jersey has adopted the Supreme Court's ruling in National Rail Road Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), that "a victim's knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based." Shepherd, 174 N.J. at 22.

The Court differentiated claims based on "discrete acts" from "hostile work environment" claims, since discrete acts are "easy to identify" and each incident "constitutes a separate actionable 'unlawful employment practice.'" Shepherd, 174 N.J. at 19 (quoting Morgan, 536 U.S. at 114). Hostile environment claims are based on "repeated conduct" that "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Ibid. (quoting Morgan, 536 U.S. at 115). "[W]hen an

24

individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Id. at 18 (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999)).

Unlike CRA and LAD claims, malicious prosecution claims are governed by the six-year statute of limitations for "tortious injury to the rights of another." N.J.S.A. 2A:14-1. See also Earl v. Winne, 14 N.J. 119, 131-32 (1953); Pitcock v. Kasowtiz, Benson, Torres & Friedman, 426 N.J. Super. 582, 585 (2012). To prevail on a claim of malicious prosecution, a "plaintiff must prove (1) that the criminal action was instituted against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 393-94 (2009) (quoting Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003)). An indictment, by definition, establishes probable cause. Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 251 (3d. Cir. 2001).

"[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." Heck v. Humphrey, 512 U.S. 477, 489 (1994) (citing, among others, 1 Calvin W. Corman, Limitations of Actions § 7.4.1, p. 532 (1991)). The dismissal of

25

criminal charges through PTI is not considered a termination favorable to the accused and thus is an insufficient basis for a claim of malicious prosecution. Lindes v. Sutter, 621 F.Supp. 1197, 1201 (D.N.J. 1985). See also Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 288 (App. Div. 2010). A "favorable determination" requires a final determination "on the merits in the defendant's favor." In re. Gauthier, 461 N.J. Super. 507, 516 (App. Div. 2019). However, entry into and completion of PTI avoids an adjudication on the merits altogether. Id. at 515. See also Rubin v. Nowak, 248 N.J. Super. 80, 83 (App. Div. 1991) (no favorable termination if complaint withdrawn pursuant to an agreement of compromise with accused); Gilles v. Davis, 427 F.3d 197, 211-12 (3d Cir. 2005) (entry into a court-supervised diversionary program is not a "favorable termination" under Heck for purposes of a malicious prosecution claim).

Here, plaintiff has not pled that she was subjected to a hostile work environment beyond the period from October 5 to October 28, 2016, when the alleged discriminatory policy barring her from working with inmates, reassigning favorable assignments, denying her mandatory CPR training and withholding access to meals in the dining room was in place. The last discrete act plaintiff claims constituted discrimination occurred on March 19, 2019,

when Mills-Rogers requested plaintiff either resign or retire, allegedly in retaliation. As such, plaintiff's claims against DOC defendants are barred, since she did not file suit until October 28, 2022, more than two years after the act.[6]

To the extent plaintiff argues she brought a timely malicious prosecution claim against MCPO defendants, the initial investigation into her actions on October 5, 2016 resulted in no criminal charges being filed, thereby failing to satisfy the first element of a malicious prosecution claim. The second event, plaintiff's arrest on February 12, 2019, and subsequent indictment and guilty plea on April 16, 2021, also cannot support a malicious prosecution action because there was probable cause to file the charges, namely plaintiff's own admission she had a handgun and her lack of a permit, and because the matter was not terminated favorably since she entered PTI. Plaintiff did not plead facts sufficient to support even a timely malicious prosecution claim.

Finally, we are unpersuaded by plaintiff's argument that the statute of limitations should be tolled due to "trickery" by any of the defendants. Plaintiff fails to explain sufficiently how she was allegedly tricked into withdrawing her complaint and fails to connect her withdrawal of the DCR complaint to her

---

[6] As noted at pp. 32-35, the court dismissed plaintiff's claims against the DRM defendants and Ganesh for lack of prosecution and, as such, we need not address whether plaintiff pled timely claims against those defendants.

untimely filing.  In any event, nothing in the pleadings or the record before us supports any argument for tolling of the statute of limitations.

V.

Plaintiff next contends that her claims against Rudrow, Kuhn, and MCPO are "plausible" under the heightened pleading standards and thus the court improperly dismissed those claims in its January 29, 2024 and February 15, 2024 orders.  She further explains her allegations are supported by the evidence cited in the complaint and discovered after its filing and argues that questions of material fact remained, including the background information of the investigation, and how the MCPO investigation and prosecution were launched when there was no evidence of criminal activity.

Plaintiff also argues she properly connected CBIZ defendants to this matter and explained how they caused her injury, and that she supported her claim with sufficient, relevant, and credible evidence.  She asserts that she has proven the elements of a conspiracy and seeks remand for adjudication under employment contract laws.  Plaintiff alleges MCPO and the DOC, and the individually named defendants, conspired to deny her substantive rights and take her property through unlawful disciplinary procedures, and that letters written by Galuchie resulted in the indefinite postponement of her OAL hearing.

28

Plaintiff claims she would have prevailed in the OAL hearing had it been allowed to continue, and her claims of retaliation, discrimination, and tortious interference were sufficient to survive a motion for dismissal. Plaintiff defines malice as harm that "was inflicted intentionally and without justification or excuse," and argues that she has made a prima facie showing that the enjoined third parties, DRM defendants, CBIZ defendants, and MCPO defendants, acted with malice in causing her injury. Plaintiff argues, in effect, that MCPO Defendants, DRM defendants, and CBIZ defendants conspired to deprive her of her right to appeal the disciplinary actions before the OAL and to withhold her workers' compensation benefits in retaliation for her complaints to the EEOC. We are again unpersuaded by any of these arguments.

A court determining the sufficiency of a pleading must consider "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Valentzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). A reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

To show a valid breach of contract, a plaintiff must prove four elements:

> first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]."
>
> [Globe Motors Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alterations in original) (quoting Model Jury Charge (Civil), 4.10A, "The Contract Claim—Generally" (May 1998)).]

A plaintiff who claims tortious interference with a contract must prove:

> (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage.
>
> [Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003)].

Claims for tortious interference must be based on "facts claiming that the interference was done intentionally and with 'malice.'" Id. at 269 (quoting Printing Mart, 116 N.J. at 751). In this context, "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." Ibid. (quoting Printing Mart, 116 N.J. at 751).

Here, plaintiff's operative complaint claimed that her injuries arose from the breach of her employment contract but failed to provide the contract or cite any terms of the contract she believed were violated by DOC defendants' actions. Plaintiff also claimed that the DOC's "policy and practice was in violation of union contract and civil service law" but again failed to plead facts to show she was part of any union subject to such a contract, and even if she were, she again failed to provide any written contract or specify what terms she believes were violated. In dismissing plaintiff's complaint, the court found that even a "generous reading" of the complaint revealed no "contract nor any breach of contract" claims and rejected plaintiff's tortious interference claims.

Plaintiff also alleged that MCPO defendants "conspired and interfered with [her] N.J. State constitutional rights and denied her a hearing for the redress of employment grievances" before the OAL by sending a letter to the OAL that "caused the denial of the employment hearing." The letter, however, requested only that the proceedings "be stayed for 30 days . . . [to] . . . complete our review" of the incident. The OAL proceeding was not halted due to the letter or pending criminal investigation; the hearings were adjourned until February 2019. Plaintiff again has failed to plead a fundament of a course of action that MCPO interfered without justification in any contract she may have had.

31

Because plaintiff has failed to provide any contract she alleges was violated or establish that any defendants interfered with the contract, the court's dismissal was entirely appropriate.

## VI.

Plaintiff also challenges the February 23, 2024, order dismissing her claims against the DRM defendants and Ganesh without prejudice for lack of prosecution. She argues that the complaint should be reinstated in the interest of justice and in consideration of the credible evidence that defendants are responsible for the harms she has suffered. We are unpersuaded.

Just as a motion to amend a complaint is subject to review for an abuse of discretion, Grillo, 469 N.J. Super. at 275, so too is a motion to reinstate a complaint. Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 93 (2008) (citing Cooper v. Consol. Rail. Corp., 391 N.J. Super. 17, 22-23 (App. Div. 2007)). A court will "decline[] to interfere with [such] matters of discretion unless it appears that an injustice has been done." Ibid. (alterations in original) (quoting Cooper, N.J. Super. at 22-23).

If an action has been pending for four months without "a required proceeding having been taken therein," a court may dismiss any or all defendants without prejudice after providing notice to the plaintiff. R. 1:13-7(a). A multi-

defendant case may be reinstated within ninety days "on a showing of good cause, but otherwise a party must demonstrate exceptional circumstances." Baskett v. Kwokleung Cheung, 422 N.J. Super. 377, 384 (App. Div. 2011).

As noted, the February 23, 2024 order dismissed plaintiff's claims against DRM defendants and Ganesh without prejudice due to lack of prosecution. Plaintiff was ordered to file an amended complaint by November 16, 2023, which she failed to do. It was only after the CBIZ defendants and MCPO defendants moved to dismiss her complaint that she moved to file the amended complaint.

In seeking to reinstate the complaint, she argued many of the same reasons she raises in this appeal, and which have found to be factually and legally without merit. Further, she withdrew the motion on March 13, 2024 and has not properly argued before us how the court committed error when it dismissed her claims without prejudice.

We are convinced plaintiff's challenges are procedurally improper and substantively without merit. First, having failed to properly seek to reinstate her claims, and then withdrawing her application which ostensibly sought such relief, plaintiff failed to preserve any challenge to the court's order. It is well-settled that appellate courts "will decline to consider questions or issues not

33

properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Neither exception applies here. Further, plaintiff did not brief any specific errors in the court's decision to dismiss her claims against the DRM defendants and Ganesh for failure to prosecute before us, as required. See Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025) ("[A]n issue not briefed is deemed waived.").

In any event, we are satisfied that plaintiff's claims are substantively without merit. We reach that conclusion after exercising our original jurisdiction, which is appropriate here "to avoid unnecessary further litigation" and when "the record is adequate to terminate the dispute and no further fact finding" is required and "a remand would be pointless because the issue to be decided is one of law . . . ." Vas v. Roberts, 418 N.J. Super. 509, 523-24 (App. Div. 2011); see also R. 2:10-5. Our exercise of original jurisdiction is also

warranted here "as a way to achieve the judicial system's goals of efficiency, finality, and fairness." Price v. Himeji, LLC, 214 N.J. 263, 283 (2013). Based on the record, it is clear that as arms of the State, the DRM defendants and Ganesh, as an employee of the DOC, are entitled to the same immunity as shields the DOC defendants and MCPO defendants, see Will, 491 U.S. at 71 (citing Brandon, 469 U.S. at 471), and, after conscientiously reviewing the record, we discern no other basis to believe that an amendment to the complaint would have survived any subsequent motion to dismiss and hence would have been futile. See Grillo, 469 N.J. Super. at 275.

To the extent we have not specifically addressed any of plaintiff's arguments it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1878-23